People v Owens (2018 NY Slip Op 01712)





People v Owens


2018 NY Slip Op 01712


Decided on March 16, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND TROUTMAN, JJ.


73 KA 13-01704

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
PHILLIP H. OWENS, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, HARRIS BEACH PLLC, PITTSFORD (KELLY S. FOSS OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Gail Donofrio, J.), rendered September 13, 2013. The judgment convicted defendant, upon a jury verdict, of attempted assault in the first degree, criminal possession of a weapon in the third degree and criminal possession of a weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed as a matter of discretion in the interest of justice and on the law and a new trial is granted on counts two through five of the indictment.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of one count each of attempted assault in the first degree (Penal Law §§ 110.00, 120.10 [1]) and criminal possession of a weapon in the third degree (§ 265.02 [1]), and two counts of criminal possession of a weapon in the second degree (§ 265.03 [1] [b]; [3]). The prosecution arose from an alleged incident in which defendant, while in a vehicle located in a convenience store parking lot, fired gunshots at a vehicle being driven by defendant's estranged wife. Prior to trial, defendant's first counsel was in possession of the multi-camera surveillance video from the convenience store at the intersection where the shooting occurred, but was unable to play it. It is undisputed that, after defendant was assigned new counsel, that attorney also had difficulty playing the video on a computer and was able to view the video only at a certain location with assistance. Defense counsel had his investigator record portions of the video on an iPad, i.e., footage of vehicles outside of the store in the parking lot, which were the only portions that defense counsel thought were relevant based upon the allegations. Defense counsel did not view the video from cameras inside the store. Defense counsel showed the recorded portions of the video to defendant in jail, but those portions did not include video from inside the store.
The evidence at trial established that the estranged wife made a 911 call approximately one hour after the shooting in which she reported that she was driving down a street in a green Lexus with the then-four-year-old son of the estranged wife and defendant, and that she was approaching the intersection where the convenience store was located when defendant fired gunshots from a vehicle in the convenience store parking lot. During the intervening hour before the 911 call, the estranged wife had made a significant number of phone calls, including to her divorce attorney. The estranged wife testified regarding the route that she took to the intersection and described seeing defendant firing a gun at her.
Although the surveillance video had been admitted in evidence during the People's case-in-chief, it was not played in court until summations. Upon watching the video played during the prosecutor's summation, including camera angles from inside the store, defendant recognized the estranged wife as the woman purchasing items and then exiting the convenience store parking lot with two children in a blueish-gray Nissan, which was different from the green Lexus that the estranged wife was supposedly driving when the shooting occurred at the [*2]intersection less than two minutes later. Thus, the video evidence depicted the estranged wife leaving the convenience store parking lot in a vehicle with two children even though the prosecution's theory at trial, as supported by the estranged wife's testimony, was that the estranged wife arrived at the scene less than two minutes later, approaching the intersection on a different street from the opposite direction in a different vehicle, with just the son in the back seat.
Following summations, defendant moved to reopen the proof to re-call the estranged wife for further cross-examination about the video evidence. Defendant argued, among other things, that it would be difficult for him to receive a fair trial when he was unable to access the video before trial and saw the video depicting the estranged wife for the first time during summations, and the video clearly contradicted the estranged wife's allegations upon which he was being prosecuted. Supreme Court denied defendant's motion to reopen the proof on the ground that defense counsel had the video in his possession for several months and "[i]t was incumbent on the defense to notify the prosecutor that he was not able to access all of the frames of the disk." On appeal, defendant contends, and the People concede, that reversal is required because the court abused its discretion in denying defendant's motion to reopen the proof and defendant was denied meaningful representation. We agree.
With respect to reopening the proof, although CPL 260.30 sets forth the sequence of a trial by jury, "[t]he statutory framework . . . is not a rigid one and the common-law power of the trial court to alter the order of proof in its discretion and in furtherance of justice' remains at least up to the time the case is submitted to the jury" (People v Olsen, 34 NY2d 349, 353 [1974]; see People v Whipple, 97 NY2d 1, 6 [2001]). Thus, the decision to permit a party to reopen the case, at least prior to its submission to the jury, lies within the discretion of the trial court (see Whipple, 97 NY2d at 6, 8; People v Ventura, 35 NY2d 654, 655 [1974]; Olsen, 34 NY2d at 353; People v Hollis, 255 AD2d 615, 616 [3d Dept 1998], lv denied 92 NY2d 1033 [1998]; People v Saddler, 219 AD2d 796, 796 [4th Dept 1995], lv denied 88 NY2d 853 [1996]). A trial court's discretion to preclude evidence is nonetheless "circumscribed by the defendant's constitutional rights to present a defense and confront his [or her] accusers" (People v Hudy, 73 NY2d 40, 57 [1988], abrogated on other grounds by Carmell v Texas, 529 US 513 [2000]), because "[a] defendant always has the constitutional right to present a complete defense" (People v Spencer, 20 NY3d 954, 956 [2012] [internal quotation marks omitted]; see Crane v Kentucky, 476 US 683, 690 [1986]) and "to put before a jury evidence that might influence the determination of guilt" (Pennsylvania v Ritchie, 480 US 39, 56 [1987]; see People v Jovanovic, 263 AD2d 182, 183-184 [1st Dept 1999], appeal dismissed 95 NY2d 846 [2000], rearg denied 95 NY2d 888 [2000]; see generally People v McLeod, 122 AD3d 16, 19 [1st Dept 2014]).
Here, defendant's arguments in support of his motion to reopen the proof implicated the constitutional aspects of his contention raised on appeal, i.e., that reopening the proof was necessary to afford him a fair trial and his right to present a defense to the allegations upon which he was being prosecuted. To the extent that defendant did not preserve the constitutional aspects of his contention for our review by failing to raise them sufficiently before the trial court (see People v Lane, 7 NY3d 888, 889 [2006]; People v Paulk, 107 AD3d 1413, 1415 [4th Dept 2013], lv denied 21 NY3d 1076 [2013], reconsideration denied 22 NY3d 1157 [2014]), we exercise our power to review those aspects of his contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
As defendant correctly contends, defense counsel set forth a proffer of material evidence that was directly relevant to the issue whether the alleged victim and sole eyewitness had fabricated her story or was even at the scene at the time of the alleged shooting incident (see People v Desire, 113 AD2d 952, 952 [2d Dept 1985]). Inasmuch as the video depicted a woman identified by defendant as the estranged wife purchasing items and then leaving the store with two children in a vehicle different from the one that she supposedly occupied with just one child at the time of the shooting less than two minutes later, we agree with defendant that the video provided strong proof that the estranged wife was not at the intersection in a green Lexus at the time of the shooting. Although it is undisputed that defense counsel could have, with the exercise of due diligence, viewed the video in its entirety and reviewed it with defendant pursuant to his pretrial requests (see People v Frieson, 103 AD2d 1009, 1009 [4th Dept 1984]), the court erred in failing to recognize defendant's constitutional right to present a complete defense and confront his accuser with evidence that, under these circumstances, would certainly [*3]influence the jury's determination of guilt (see generally People v Burke, 176 AD2d 1000, 1001 [3d Dept 1991]; People v Harami, 93 AD2d 867, 867-868 [2d Dept 1983]). Inasmuch as the evidence of defendant's guilt is not overwhelming, the People cannot meet their burden of showing that the error is harmless beyond a reasonable doubt (see People v Crimmins, 36 NY2d 230, 237 [1975]; Burke, 176 AD2d at 1001; Harami, 93 AD2d at 868). Defendant is thus entitled to a new trial on that ground.
We further agree with defendant and the People that defendant is entitled to a new trial on the separate ground that defense counsel's failure to secure a working copy of the video and to review the video in its entirety with defendant prior to trial deprived him of meaningful representation under the circumstances of this case. The record establishes that defense counsel, through a lack of due diligence, failed to obtain a reviewable copy of the video prior to trial, did not review the footage other than the views of the parking lot, and did not review the various camera angles in their entirety with defendant, despite defendant's pretrial insistence that the video be provided to him. Defendant established that those failures compromised his right to a fair trial because the video significantly—if not entirely—undermined the prosecution's theory by calling into doubt the estranged wife's veracity and the physical possibility of her account given the actions and travel distance necessary for her to have returned to the scene in a different vehicle with one less child, from a different direction, in less than two minutes. The record thus establishes that defendant was denied effective assistance of counsel (see People v Canales, 110 AD3d 731, 732-735 [2d Dept 2013]; People v Cyrus, 48 AD3d 150, 154 [1st Dept 2007], lv denied 10 NY3d 763 [2008]).
Finally, the jury acquitted defendant of the first count in the indictment, charging attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), and, without addressing the propriety of the court's acquit-first instruction with respect to the charges at issue, we note that the jury disregarded the instruction and rendered a verdict of not guilty on the sixth count in the indictment, charging reckless endangerment in the first degree (§ 120.25; see CPL 1.20 [12]; cf. Matter of Suarez v Byrne, 10 NY3d 523, 537 [2008], rearg denied 11 NY3d 753 [2008]; People v Charles, 78 NY2d 1044, 1047 [1991]). Inasmuch as double jeopardy bars retrial on both of those counts, we grant a new trial on counts two through five of the indictment only. In light of our determination, we do not address defendant's remaining contention.
Entered: March 16, 2018
Mark W. Bennett
Clerk of the Court